Erin Rose Ronstadt, SBN 028362
Kyle Shelton, SBN 027379
RONSTADT LAW, PLLC
P.O. Box 34145
Phoenix AZ 85067
Phone: (602) 615-0050
Fax: (602) 761-4443
erin@ronstadtlaw.com
kyle@ronstadtlaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Burton, | **Case No.** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Reliance Standard Life Insurance Company, | |
| Defendant. | |

For her claims against Defendant Reliance Standard Life Insurance Company, ("RSLIC" or "Defendant"), Plaintiff Jennifer Burton ("Ms. Burton" or "Plaintiff") alleges as follows:

### PARTIES, VENUE, AND JURISDICTION

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. As an employee of Arthur J. Gallagher & Co. ("Arthur Gallagher"), Ms. Burton was a participant of the Arthur J. Gallagher & Co. Group Insurance Plan (the "Plan").

3. Arthur Gallagher is an Illinois company headquartered in Itasca, Illinois.

4. The Plan is a purported ERISA benefit plan established and maintained by Arthur Gallagher for the benefit of its employees.

5. RSLIC is a third-party claims administrator for the Plan for short-

term disability ("STD") and long-term disability ("LTD") benefits.

6.     RSLIC fully insures Arthur Gallagher employees for long-term disability ("LTD") benefits pursuant to Policy Number 118606 ("the Policy"). (Attach Policy at Exhibit A.)

7.     RSLIC is a Plan fiduciary as defined by ERISA.

8.     At the time Ms. Burton sought LTD benefits under the Plan, RSLIC administered claims for Arthur Gallagher under the Plan, acted on behalf of the Plan, and acted as an agent of Arthur Gallagher and/or the Plan.

9.     RSLIC makes final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

10.     RSLIC has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

11.     Ms. Burton currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

12.     RSLIC has its principal place of business in the state of Philadelphia.

13.     RSLIC is licensed and authorized to do business in Maricopa County, Arizona.

14.     RSLIC resides and is found in Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1391.

15.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

16.     Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### *Ms. Burton's Disability*

17.     Ms. Burton was diagnosed with multiple sclerosis ("MS") in 1992.

18.     Ms. Burton was able to work with MS for decades.

19.     From June 27, 2019 to July 2, 2019, Ms. Burton was hospitalized due to life-threatening meningitis.

20.     She suffered serious residual effects from meningitis and continues to suffer from meningitis complications.

21.     Meningitis can cause permanent disabling symptoms.

22.     After developing meningitis, she was diagnosed with periodic limb movements of sleep ("PLMS"), peripheral neuropathy, and lumbar spine degenerative disc disease ("DDD").

23.     Ms. Burton's meningitis, PLMS, peripheral neuropathy, and DDD are unrelated to MS.

24.     MS does not contribute to Ms. Burton's inability to work and has not progressed.

25.     A magnetic resonance imaging ("MRI") scan of the brain performed on June 29, 2019, while Ms. Burton was hospitalized due to meningitis, revealed "[n]o [magnetic resonance] evidence of active [MS] infection or active demyelination."

26.     A subsequent MRI of the brain performed on March 8, 2021 also revealed "[n]o new or enhancing lesion to suggest active [MS] disease."

27.     At no time since she became Totally Disabled has Ms. Burton had active MS.

28.     Ms. Burton's non-MS medical conditions are disabling and prevent her from performing her Regular Occupation or Any Occupation under the Policy.

29.     Ms. Burton is under the regular care of several physicians.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

-3-

30.    Ms. Burton became Totally Disabled while insured under the Policy.

### Plan Language

31.    To be eligible for LTD benefits, Ms. Burton must meet the definition of "Totally Disabled" and "Total Disability" as they are defined in the Policy.

32.    Under the Policy, "Totally Disabled" and "Total Disability" are defined as a disability that is "a result of an Injury or Sickness."

33.    Under the Policy, during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured must be unable to perform the material duties of his/her Regular Occupation.

34.    The Policy defines "Regular Occupation" as "the occupation the Insured is routinely performing when Total Disability begins."

35.    Under the Policy, "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis.

36.    An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period.

37.    Under the Policy, "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability.

38.    Under the Policy, once a Monthly Benefit has been paid for 24 months, an Insured must be unable to perform the material duties of Any Occupation in order to be considered Disabled.

39.    The Policy defines "Any Occupation" as "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

40.     Under the Policy, the "Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings."

41.     The Policy includes a limitation for "Pre-Existing Conditions."

42.     The Policy states the limitation for "Pre-Existing Conditions" are that "[b]enefits will not be paid for a Total Disability: (1) caused by; or (2) resulting from; a Pre-Existing Condition unless the Insured has been Actively at Work for one (1) full day following the end of twelve (12) consecutive months from the date he/she became an Insured."

43.     The Policy defines "Actively at Work" as "actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed."

44.     Ms. Burton has, at all times since the date her Disability began, been eligible for LTD benefits due to her inability to perform the duties of her Regular Occupation or Any Occupation.

### Ms. Burton's Employment

45.     Ms. Burton began working for Arthur Gallagher on June 29, 2018.

46.     Arthur Gallagher employed Ms. Burton as a Senior Claims Adjuster.

47.     Ms. Burton had been a claims adjuster for over two decades prior to joining Arthur Gallagher.

48.     On June 27, 2019, Ms. Burton was hospitalized with meningitis.

49.     Ms. Burton last worked on June 25, 2019 due to her disability.

### RSLIC's Claim Handling

50.     Ms. Burton applied for STD benefits.

51.     RSLIC approved Ms. Burton's STD benefits for the maximum benefit period until December 30, 2019.

52.     On November 22, 2019, RSLIC opened an LTD claim and began investigating Ms. Burton's LTD eligibility.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

53.     RSLIC's November 22, 2019 internal note stated that Ms. Burton "is eligible however subject to pre [e]x[isting] investigation."

54.     On December 3, 2021, Ms. Burton returned a completed Pre-Existing Condition Questionnaire form to RSLIC.

55.     On December 4, 2019, RSLIC telephonically interviewed Ms. Burton. RSLIC's internal notes for the interview stated Ms. Burton had contracted meningitis and that "she was using a cane," her "cognitive perception" had been affected," and she now "gets tired easily." RSLIC's internal notes for the interview also stated that Ms. Burton "did not [have] new [MS] lesions."

56.     On December 30, 2019, RSLIC referred Ms. Burton's case for a pre-existing medical review.

57.     On January 10, 2020, RSLIC's nurse consultant, Moneco Foulker RN, completed the pre-existing medical review.

58.     Ms. Foulker stated that "[r]ecords indicated [Ms. Burton's] meningitis and MS exacerbation resolved by 09/13/19 with [Ms. Burton] capable of returning to full time work capacity."

59.     Ms. Foulker also stated that Ms. Burton's treating provider "Dr. [Aimee] Borazanci restricted [Ms. Burton] to a 20% reduction in case load, restriction is not supported by objective clinical documentation of a severity at a quality of impaired cognitive function," adding that "[r]estriction appears to be job related."

60.     Ms. Foulker noted that Ms. Burton had been referred by Dr. Borazanci for neuropsychological testing.

61.     Ms. Foulker stated that "[m]eningitis is not [a] preexisting [condition]."

62.     Despite acknowledging evidence of ongoing positive clinical findings in examinations and complaints of ongoing symptoms, Ms. Foulker

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

determined that Ms. Burton's meningitis residuals had "resolved by 09/13/19 with [Ms. Burton] capable of returning to full time work capacity."

63.   Ms. Foulker incorrectly stated that Dr. Borazanci restricted Ms. Burton to a 20% reduction in case load. Dr. Borazanci's assistant, Charrid Simpson FNP opined the restriction.

64.   Ms. Foulker did not examine or speak with Ms. Burton.

65.   Ms. Foulker did not speak with Ms. Burton's treating medical providers.

66.   Ms. Foulker is unqualified to opine on Ms. Burton's conditions.

67.   RSLIC did not attempt to obtain Ms. Burton's neuropsychological testing results.

68.   In a letter dated January 15, 2020, RSLIC denied Ms. Burton's LTD benefits (the "Denial").

69.   RSLIC based the Denial solely on Ms. Foulker's medical review.

70.   RSLIC's Denial was based on a cursory and deficient review.

71.   On January 27, 2020, Arthur Gallagher's Senior Benefits Specialist and Leave Administrator, Karen J. Cole, contacted Michelle Mathias at RSLIC by email upon learning the details of RSLIC's Denial and asked whether the determination "was a typo?"

72.   Ms. Cole went on to inquire "[h]ow can you say [Ms. Burton] wasn't eligible for disability beyond 9/13/19 when [RSLIC] approved her for STD benefit through 12/30/19" and requested that Ms. Mathias "[p]lease explain this statement."

73.   On January 27, 2020, Ms. Mathias emailed Ms. Cole and stated that "the STD review determined [Ms. Burton] is supported to 12/30/19 "and that "[Ms. Burton's] condition is not pre-existing […] [h]owever; she is not meeting the definition of total disability beyond the LTD elimination period."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

74.     On February 12, 2020, Ms. Burton's counsel submitted a letter to RSLIC requesting relevant documents under ERISA.

75.     RSLIC disclosures were deficient and most notably lacking RSLIC's medical reviews and the entire STD claim file.

76.     On April 21, 2020, Ms. Burton's counsel submitted a letter to RSLIC informing them that they had not received any further disclosures and submitted another request for relevant documents including 1) RSLIC's medical reviews, 2) the entire STD claim file, and 3) RSLIC's LTD internal notes.

77.     Ms. Burton's counsel received a supplemental disclosure from RSLIC that remained deficient and most notably lacking the STD claim file.

78.     RSLIC did not provide the Policy until June 12, 2020, despite the Policy clearly being a "relevant document" as defined by ERISA.

79.     On June 12, 2020, RSLIC refused to provide the STD claim file, directing Ms. Burton to ask the STD claims examiner directly. Ms. Burton did as directed and still has never received the STD claim file.

80.     Plaintiff is informed and believes RSLIC had access to the STD claim file and could have provided.

81.     Undoubtedly, the STD claim file contains "relevant documents" as defined by ERISA.

82.     As part of its legal representation, Ms. Burton's counsel instructed RSLIC that RSLIC and its third-party associates may not contact Ms. Burton or her treating providers without arranging such contact through Ms. Burton's counsel.

83.     On November 10, 2020, Ms. Burton appealed through counsel (the "Appeal").

84.     As part of the Appeal, Ms. Burton submitted objective evidence supporting her ongoing disability under the Policy, including an independent functional capacity evaluation ("FCE"), an independent vocational evaluation

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

with addendum, a fully favorable Social Security determination, and updated treatment records.

85.     The vocational examiner noted that while Ms. Burton was diagnosed with multiple sclerosis since 1992, she had an excellent work history in the Insurance Industry primarily as a Claims Examiner/Claims Adjuster for Workers' Compensation. He concluded she would not be able to perform her past relevant work as a Claims Adjuster or any other sedentary work.

86.     On April 19, 2020, the Social Security Administration ("SSA") determined that Ms. Burton became disabled on June 26, 2019.

87.     Updated medical evidence submitted with Ms. Burton's Appeal revealed new medical conditions.

88.     Ms. Burton was diagnosed with lumbar spine DDD in January 2020.

89.     Ms. Burton was diagnosed with periodic limb movements of sleep ("PLMS"), also referred to as periodic limb movement disorder ("PLMD"), in April 2020.

90.     Ms. Burton was diagnosed with idiopathic progressive neuropathy in June 2020.

### *RSLIC's Gratuitous Appeal Review*

91.     RSLIC failed to fully investigate the claim before issuing the Denial.

92.     RSLIC failed to timely investigate the Appeal, waiting until the final hour to begin its review.

93.     On December 4, 2020, RSLIC issued a letter stating an intent to obtain an "independent" physician review, thereby claiming an additional 45 days to make a final determination on Ms. Burton's appeal.

94.     RSLIC failed to identify the special circumstances justifying the 45-day extension as mandated by ERISA.

95.     RSLIC provided no "special circumstances" justifying the additional 45 days for its review.

96.     On December 23, 2021, RSLIC sent Ms. Burton a December 21, 2020 neurological advisory report by David Hoenig, M.D.

97.     Dr. Hoenig's "advisory report" singularly addressed MS.

98.     Dr. Hoenig's "advisory report" failed to address Ms. Burton's other disabling medical conditions, including her meningitis and related issues.

99.     Dr. Hoenig, despite having never reviewed or addressed Ms. Burton as a whole person or considered all of her medical conditions, opined that Ms. Burton had full-time work capacity.

100.    Dr. Hoenig stated "[t]here is no documentation of a neuropsychological evaluation submitted for review demonstrating objective cognitive pathology."

101.    But Dr. Hoenig acknowledged in his report that RSLIC forwarded him the October 17, 2019 neuropsychological consultation and neuropsychological testing ("NPT") that revealed cognitive impairment in multiple areas.

102.    Dr. Hoenig entirely failed to address the FCE in his "advisory report."

103.    On January 15, 2021, Ms. Burton's counsel responded to Dr. Hoenig's advisory report (the "First Response").

104.    On February 5, 2021, Dr. Hoenig issued an addendum advisory report to the First Response.

105.    Dr. Hoenig "acknowledged that [Ms. Burton] has cognitive difficulty."

106.    Dr. Hoenig stated that "[t]here was documentation of a sleep study demonstrating abnormalities" and that "[t]his may be a factor in impairment."

107.    Dr. Hoenig "acknowledged that the claimant had a Functional Capacity Evaluation in which the claimant does not demonstrate the functional

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

capabilities required to perform her past work or any other type of sedentary demand work on a regular and consistent basis." Dr. Hoenig also "recognized that the [Ms. Burton] ha[d] neurological deficits on exam[ination]."

108.   Dr. Hoenig stated that "[b]ased on the documentation provided, from a neurological perspective, there was medical data to substantiate the presence of some of the claimant's subjective complaints as of June 25, 2019."

109.   RSLIC failed to send Dr. Hoenig's Addendum report to Ms. Burton for response.

110.   RSLIC's internal note on February 10, 2021 stated that Dr. Hoenig's "2/5/21 addedum [*sic.*] indicates no change in his neuro assessment but defers to Neuropsych and sleep medicine for assessment of other supported impairments."

111.   RSLIC requested neuropsychological and sleep medicine peer reviews.

112.    On February 22, 2021, RSLIC emailed Ms. Burton's counsel a February 17, 2021 neuropsychology Advisory Report by David Nowell, Ph.D. and a February 18, 2021 sleep medicine Advisory Report by Allen Blaivas, D.O.

113.   In Dr. Nowell's February 17, 2021 neuropsychology Advisory Report, the only limitation he considered is that Ms. Burton's October 17, 2019 neuropsychological evaluation "offers an impression of impaired processing speed." But the October 17, 2019 NPT revealed Ms. Burton has impairments in processing speed, motor speed, dexterity, and encoding of structed verbal information.

114.   Dr. Nowell conceded that Ms. Burton's cognitive inefficiency described in the October 17, 2019 NPT could also be likely attributed to Ms. Burton's meningitis.

115.   Dr. Nowell did not address the FCE when analyzing Ms. Burton's impairments.

116.    Dr. Nowell improperly attempted to contact Ms. Burton's neuropsychological examiner without arranging contact first with Ms. Burton's legal counsel.

117.    In the February 18, 2021 sleep medicine Advisory Report, Dr. Blaivas acknowledged that Ms. Burton has sleep-related diagnoses from June 25, 2019 that included restless legs syndrome/periodic limb movement disorder and fatigue.

118.    Dr. Blaivas acknowledged that Ms. Burton's April 5,2020 polysomnography confirmed she has periodic movements in sleep syndrome.

119.    Dr. Blaivas repeatedly described Ms. Burton's PLMD as moderate in severity.

120.    Dr. Blaivas failed to address the FCE when analyzing Ms. Burton's impairments.

121.    RSLIC knows that FCEs are gold standards for determining a claimant's functionality, and yet, it and its peer reviewers consistently and willfully ignored the FCE.

122.    Dr. Blaivas repeatedly stated in his report's conclusions that Ms. Burton's fatigue and insomnia were caused by her underlying MS despite having no medical basis to make that assertion.

123.    The only basis Dr. Blaivas provided for his conclusion is a quote from an article published by academics in the European Journal of Neurology in 2012 titled: "Multiple Sclerosis and restless legs syndrome; a systematic review and meta-analysis." But Dr. Blaivas misquoted the study, which actually supports Ms. Burton's claim.

124.    Dr. Blaivas concluded that Ms. Burton is not impaired due to sleep-related issues and does not have any restrictions or limitations.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

125.   Dr. Blaivas improperly contacted Ms. Burton's former sleep medicine medical provider without arranging contact first with Ms. Burton's counsel.

126.   On March 22, 2021, Ms. Bruton's counsel sent a response to Drs. Nowell's and Blaivas' Advisory Reports to RSLIC (the "Second Response").

127.   Enclosed with the Second Response were updated medical records that included an updated November 10, 2020 neuropsychological consultation report.

128.   On March 31, 2021, RSLIC sent Ms. Burton's counsel an email containing a March 30, 2021 neuropsychology Advisory Report addendum by Dr. Nowell. RSLIC requested a response by April 7, 2021.

129.   In the March 30, 2021 neuropsychology Advisory Report addendum, Dr. Nowell failed to review the November 9, 2020 neuropsychological evaluation.

130.   Dr. Nowell stated that Ms. Burton's February 22, 2021 neurological medical record "notes no behavioral health complaints."

131.   In reality, Ms. Burton's February 22, 2021 neurological progress noted that Ms. Burton reported she suffered from worsening cognitive issues.

132.   On April 7, 2021, Ms. Burton's counsel sent a response to Dr. Nowell's Advisory Report addendum to RSLIC (the "Third Response").

133.   In the Third Response, Ms. Burton's counsel notified RSLIC of its failure to confer in good faith over an extension request and disputed the unreasonable timeline it provided for Ms. Burton to respond.

134.   On April 8, 2021, RSLIC sent Ms. Burton's counsel an email containing yet another March 31, 2021 sleep medicine Advisory Report addendum by Dr. Blaivas. RSLIC requested an response by April 15, 2021.

135.   On April 20, 2021, Ms. Burton's counsel sent a response to Dr. Blaivas' Advisory Report addendum to RSLIC (the "Fourth Response").

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

136.    Enclosed with the Fourth Response were updated medical records that included an updated March 2021 MRI imaging reports of the brain and spine. Also included was argument, pointing our glaring inaccuracies in the addendum report.

137.    On May 6, 2021, RSLIC sent Ms. Burton's counsel an email containing yet another April 30, 2021 neuropsychology Advisory Report second addendum by Dr. Nowell and a May 5, 2021 sleep medicine Advisory Report second addendum by Dr. Blaivas.

138.    In the April 30, 2021 neuropsychology Advisory Report second addendum, Dr. Nowell stated that the updated March 2021 MRI imaging reports were "interpreted as revealing hyper intense supratentorial lesions consistent with multiple sclerosis." But importantly, the updated March 2021 MRI imaging reports concluded that Ms. Burton has "[n]o new or enhancing lesion to suggest active [MS] disease." Dr. Nowell ignored this critical finding.

139.    On May 12, 2021, Ms. Burton's counsel sent a response to Dr. Nowell's' Advisory Report second addendum and Dr. Blaivas' Advisory Report second addendum to RSLIC (the "Fifth Response").

140.    In the Fifth Response, Ms. Burton's counsel noted that it had been one hundred eighty-three (183) days since Ms. Burton had submitted her Appeal.

141.    In the Fifth Response, Ms. Burton's counsel noted that RSLIC had conducted no less than seven (7) medical advisory reports and addendums.

142.    In the Fifth Response, Ms. Burton also pointed out several issues with the second addendum reports.

143.    On May 12, 2021, RSLIC's Cynthia Pietrowski emailed Ms. Burton's counsel in response to the Fifth Response, stating that she "asked for Drs. Blaivas and Nowell to address [Ms. Burton's counsel's] concerns and provide a supplemental report."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

144.   In a May 12, 2021 email response, Ms. Burton's counsel stated that RSLIC are "inexcusably delaying a determination being made on this claim."

145.   Ms. Burton's counsel requested that RSLIC make a determination on Ms. Burton's claim immediately.

146.   Ms. Burton's counsel requested that Ms. Pietrowski please provide the name and contact information for her manager.

147.   In a May 12, 2021 email response, Ms. Pietrowski stated that if Ms. Burton's counsel did not wish for her concerns to be addressed by the independent specialist then Ms. Pietrowski would continue with the review based on the current information. Ms. Pietrowski did not provide the name and contact information for her manager as requested.

148.   In a May 13, 2021 email response, Ms. Burton's counsel asked Ms. Pietrowski to please continue her review based on the current information.

149.   Ms. Burton's counsel also asked Ms. Pietrowski to consider the concerns raised in the rebuttals and disregard the Advisory Reports "due to their many errors in light of the medical evidence."

150.   In a letter dated May 18, 2021, RSLIC upheld its denial of Ms. Burton's benefits (the "Final Denial").

151.   RSLIC issued the Final Denial one hundred eighty-nine (189) days after Ms. Burton's counsel submitted the Appeal.

152.   RSLIC relied on Drs. Hoenig's, Nowell's, and Blaivas' opinions in the Final Denial.

153.   The Final Denial does not mention Dr. Hoenig's February 5, 2021 addendum Advisory Report.

154.   RSLIC unreasonably ignored the FCE report supporting Ms. Burton's physical disabling conditions.

155.    RSLIC denied the claim despite a fully favorable Social Security determination and never bothered to investigate the Social Security determination.

156.    RSLIC only relied on evidence that served the purpose of denying Plaintiff's claim.

157.    RSLIC relied exclusively on evidence gathered on Appeal, which is an abuse of discretion and breach of fiduciary duty.

### RSLIC's Ongoing Failure to Provide Disclosures

158.    On May 19, 2021, Ms. Burton requested a copy of Ms. Burton's updated relevant documents under ERISA since RSLIC's last disclosure had been on June 12, 2020.

159.    On June 24, 2021, having received no disclosures from RSLIC, Ms. Burton's counsel submitted a second letter to RSLIC requesting the updated relevant documents under ERISA.

160.    On July 21, 2021, having received no disclosures from RSLIC, Ms. Burton's counsel submitted a third letter to RSLIC requesting the updated relevant documents under ERISA.

161.    Ms. Burton's counsel received a July 28, 2021 disclosure from RSLIC.

162.    On August 13, 2021, Ms. Burton's counsel submitted a letter to RSLIC informing them that the July 28, 2021 disclosure was deficient and most notably lacked RSLIC's internal notes, part of the supplemental evidence submitted with Ms. Burton's Appeal, and part of the email correspondence sent by RSLIC to Ms. Burton's counsel.

163.    Ms. Burton's counsel received a September 2, 2021 supplemental disclosure from RSLIC.

164.    RSLIC caused delay in the appeals process at every turn and violated in a multitude of ways.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

165.    Ms. Burton exhausted her administrative remedies and timely filed this lawsuit.

## COUNT I
### (Recovery of LTD Plan Benefits)

166.    All other paragraphs and headings are incorporated by reference.

167.    The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

168.    The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Burton is no longer Disabled under the terms of the Plan.

169.    Ms. Burton continues to be Disabled from her Regular Occupation and Any Occupation.

170.    Ms. Burton has claimed the benefits under the Plan and Policy to which she is entitled.

171.    Ms. Burton reasonably expected that her medical conditions met the requirements of Disability as defined by the Policy and that she would receive benefits under the Policy until she reaches age 67 or until she was no longer disabled.

172.    Despite the coverage of Ms. Burton's Disability, RSLIC improperly denied her LTD benefits in breach of the Plan and ERISA.

173.    RSLIC's and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

174.    Ms. Burton is entitled to *de novo* review.

175.    RSLIC is operating under a structural conflict of interest as both payer and decision maker on claims.

176.    RSLIC's conflict of interest directly influenced its selections of medical reviewers.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

-17-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

177.    Instead of evaluating a participant's eligibility based on the applicable Policy language and medical evidence, RSLIC makes claims decisions based on the claims resources and financial risk it faces on certain claims.

178.    RSLIC did not properly consider the available evidence when denying Ms. Burton's claim.

179.    RSLIC failed to conduct a full and fair review.

180.    RSLIC misstated medical evidence for its own financial benefit, *e.g.,* it excessively relied on biased and untimely medical reviews.

181.    The medical consultants ignored critical medical evidence.

182.    The medical consultants mischaracterized critical medical evidence.

183.    RSLIC relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Burton's benefits.

184.    RSLIC is aware the Plan "requires satisfactory proof of disability, not etiology." *See Lesser v. Reliance Standard Life Ins. Co.,* 385 F. Supp. 3d 1356, 1374 (N.D. Ga. 2019).

185.    RSLIC's focus on MS to the exclusion of Ms. Burton's disabling conditions that would qualify her for benefits is an abuse of discretion and a violation of the Plan.

186.    RSLIC based its decision on unreliable and inaccurate information. When confronted with this knowledge, RSLIC chose to ignore the inaccuracies or created new reasons for denial.

187.    Upon information and belief, RSLIC provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

188.    RSLIC routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

189.    RSLIC failed to properly consider the opinions of Ms. Burton's treating and examining physicians and other specialists.

190.    In denying Ms. Burton's LTD benefits, RSLIC completely disregarded evidence of Ms. Burton's meningitis and other medical conditions.

191.    RSLIC used biased reviewers in evaluating Ms. Burton's claim, because it knew that the reviewers' recommendations would be unfavorable for approving Ms. Burton's benefits.

192.    The peer reviewers arbitrarily reached their opinions based on insufficient investigation.

193.    RSLIC failure to produce the STD claim file and other "relevant documents" which prejudiced Ms. Burton's ability to appeal.

194.    Plaintiff is informed and believes RSLIC destroys incriminating documents and punishes employees who rely excessively on email or who place information in writing that could be discoverable and harmful to RSLIC.

195.    RSLIC did not properly address the September 2020 FCE submitted with the Appeal.

196.    RSLIC has routinely secured FCEs in cases and had no good faith basis for ignoring the FCE.

197.    RSLIC failed to adequately explain why it disregarded the findings of the Social Security Administration ("SSA").

198.    RSLIC engaged in other procedural irregularities, which it did to serve its own financial best interests.

199.    Under ERISA, RSLIC is obligated to "maintain reasonable procedures governing the … appeal of adverse benefit determinations [and] … will be deemed to be reasonable only if – (3) the claims procedures … are not administered in a way that unduly inhibits or hampers the … processing of claims for benefits." 29 CFR § 2560.503-1(b)(3).

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

200.    RSLIC failed to maintain reasonable claims procedures and hampered the processing of Ms. Burton's claim for benefits and Appeal.

201.    RSLIC violated ERISA when it delayed the Appeal review for 45 days without special circumstances.

202.    RSLIC has a pattern and practice of improperly tolling decisions and abusing the appeals process to procure evidence supporting denials. *See, e.g., McIntyre v. Reliance Standard Life Ins. Co.*, 2019 WL 2267054 (D. Minn. 2019) (taking 204 days to make a determination and relying on untimely evidence secured on appeal was an abuse of discretion). Here, it took 189 days to make an appeals decision.

203.    RSLIC's delay – in violation of ERISA – allowed it to secure the sole evidence it relied upon to issue the Final Denial. *See McIntyre v. Reliance Standard Life Ins. Co.*, No. 17-5134 (JRT/DTS), 2021 WL 3711034, at *8 (D. Minn. Aug. 20, 2021) ("Reliance's delay in processing McIntyre's appeal and it use of that delay to procure the only piece of medical evidence that supported its adverse determination therefore contribute to the Court's determination that Reliance's denial was unreasonable.").

204.    The courts have collectively compiled "well-documented irregularities and judicial critiques of Reliance's claims review process. *See, e.g., Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 611–12 (6th Cir. 2016); *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 354–55 (5th Cir. 2015); *Hoff v. Reliance Standard Life Ins. Co.*, 160 Fed. Appx. 652, 654 (9th Cir. 2005); *Nichols v. Reliance Standard Life Ins. Co.*, No. 17-42, 2018 WL 3213618 at *6–7 (S.D. Miss. June 29, 2018), *rev'd*, 924 F.3d 802 (5th Cir. 2019) (collecting cases). It suffices to say that Reliance has a documented history of arbitrary claims denials." *McIntyre v. Reliance Standard Life Ins. Co.*, No. 17-5134 (JRT/DTS), 2021 WL 3711034, at *10 (D. Minn. Aug. 20, 2021).

205.    RSLIC violated ERISA when it denied the claim without a reasonable investigation.

206.    RSLIC exploited ERISA's regulatory framework to delay its benefit determination on review by securing excessive peer review and addendum reports.

207.    RSLIC failed to comply with ERISA's regulatory framework and failed to expeditiously resolve the claim.

208.    RSLIC has a history of delaying claims decisions and has been criticized in cases for its conduct, including in *Fessenden v. Reliance Std. Life Ins. Co.*, 927 F.3d 998, 999–1000 (7th Cir. 2019).

209.    Plaintiff is informed and believes RSLIC causes delay intentionally to avoid setting aside reserves for claims and also in the hopes that claimants will get discouraged and abandon the claims process altogether.

210.    RSLIC's delay caused significant harm to Ms. Burton and was in violation of ERISA.

211.    RSLIC has a pattern and practice of protracted claims decisions and exploits ERISA's regulations to avoid financial liability for as long as possible.

212.    RSLIC engaged in claim discussions to decide the directions of appeals without having reviewed the complete medical evidence, demonstrating its predetermined path of terminating benefits.

213.    RSLIC intentionally gathered evidence to stack the deck in its favor and against Ms. Burton, such as the peer review reports from Drs. Hoenig, Nowell, and Blaivas.

214.    RSLIC has a parsimonious claims handling history.

215.    RSLIC failed to conduct a "meaningful dialogue" regarding Ms. Burton's claim.

216.    RSLIC's conduct constitutes a breach of its fiduciary duties to Ms. Burton.

-21-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

217.    Under the de novo standard of review, to be entitled to benefits Ms. Burton need only prove by a preponderance of the evidence that she is disabled.

218.    Even under the abuse of discretion standard of review, RSLIC abused its discretion, because its decision denying Ms. Burton's disability benefits was arbitrary and capricious and caused or influenced by a financial conflicts of interest for RSLIC, its reviewing physicians, and its vendors. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

219.    Ms. Burton is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and discovery regarding the effects of RSLIC's, reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Burton's LTD claim.

220.    Under the de novo standard of review, Ms. Burton is entitled to discovery regarding, among other things, the credibility of RSLIC's medical reviews and RSLIC's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

221.    Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Burton is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

222.    Ms. Burton is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended because of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

223.    Pursuant to 29 U.S.C. § 1132(g), Ms. Burton is entitled to recover her attorneys' fees and costs incurred herein.

224.    Ms. Burton is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**WHEREFORE**, on all claims, Ms. Burton asks for entry of judgment against Defendants as follows:

A.    All past and future LTD benefits under the terms of the Plan;

B.    Clarifying and determining Ms. Burton's rights to future benefits under the terms of the Plan;

C.    For any other benefits Ms. Burton may be entitled to receive under the Plan due to her disability;

D.    An award of Ms. Burton's attorneys' fees and costs incurred herein;

E.    An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

F.    For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 8th day of October, 2021.

RONSTADT LAW, PLLC


By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Kyle Shelton
Attorneys for Plaintiff

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050